## UNITED STATES v. GORDON.

### No. 165.

Circuit Court of Appeals, Second Circuit.

March 24, 1941.

672

Moos, Nathan, Imbrey & Levine, of New York City (Alfred B. Nathan and Maurice M. Hayman, both of New York City, of counsel), for appellant.

John T. Cahill, of New York City (John C. Walsh, Asst. U. S. Atty. of New York City, of counsel), for appellee.

Before L. Hand, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The appellant was convicted on each of five counts in an indictment tried to a jury in the District Court for the Southern District of New York alleging that he had used the United States mails in furtherance of a scheme to defraud by mailing to an addressee named in each count false representations as to the financial condition of a corporation he controlled called From Broadway, Inc. The mailings were all adequately proved.

There was no substantial dispute as to the following facts shown in evidence: The appellant was a salesman who had sold many shoes to C. H. Baker, Inc., of San Francisco, Cal. He was an old friend of Mr. C. H. Baker of that corporation and so trusted by him that Baker had often given orders to the appellant accompanied by advance payments and given the appellant absolute freedom of choice as to where and how he would procure the shoes to fill such orders. These advances were made entirely on the credit of the appellant and the appellant often, if not always, paid interest upon them. Part of two of such advances were used by the appellant to supply or amplify the capital of a corporation he organized in 1935 to manufacture shoes under the name of From Broadway, Inc., and the government based its whole case upon the contention that two items, one of $7,059.54 and one of $15,000 which were shown to have been part of funds sent by Baker to the appellant for shoes to be delivered to C. H. Baker, Inc., were fraudulently put into the capital account of From Broadway, Inc.

The original capital of From Broadway, Inc., was $20,000. That was made up in part by the $7,059.54 above mentioned and was represented by one hundred shares of no par value which were issued to one Landau who became its president, treasurer and a director but who held them for the appellant; Landau actually having no investment in From Broadway, Inc. The disputed increase in the capital account of that corporation occurred in the spring of 1936 and was of $23,000 in which the $15,000 above referred was included. The use of these two amounts as contributions to the capital of From Broadway, Inc., came about in the following way.

Before From Broadway, Inc., was incorporated, C. H. Baker, Inc., had sent to a corporation the appellant controlled which was called the Gordon Shoe Co. Inc., $31,000 as an advance on orders for shoes. This was in checks of $16,000 and three of $5,000 each. It is not claimed that any part of the proceeds of the $5,000 checks was put into the capital of From Broadway, Inc., but it was shown that the check for $16,000 was deposited in the checking account of the Gordon Shoe Company, Inc., which on October 29, 1935 drew its check for $5,000 to its assistant treasurer, Marion Mooney, and on October 30, 1935, drew its check for $2,059.54 to the same person. Miss Mooney deposited those checks in her own checking account and on November 4,

1935, drew her check for $10,000 to the appellant. He endorsed that check and delivered it to Landau who in turn deposited it in his checking account and then drew three checks which totaled $20,000 to the order of From Broadway, Inc., which were delivered to that corporation and became its original capital. The increase in the capital account which took place in April, 1936, came partly from a check which C. H. Baker, Inc., sent appellant on December 4, 1935 for $15,000 payable to the Gordon Shoe Co. Inc., which it deposited and against which it drew its check for the same amount on December 9, 1935, to the order of From Broadway, Inc. The latter deposited that check in its bank account and set the amount up on its books as a loan from appellant. The books of C. H. Baker, Inc., showed the amount as "advance payment on merchandise purchased—Leo Gordon." On April 30, 1936, the appellant had this loan transferred to the capital account on the books of From Broadway, Inc., and at the same time other loans standing on its books to the credit of Landau to the amount of $8,000 were also cancelled and transferred to the capital account to make that stand at $43,000. The letters said to have been mailed in furtherance of the alleged fraud contained representations that the capital stock of From Broadway, Inc., had been increased to $43,000 and a financial statement mailed to The Finance Company of America at Baltimore, Md., gave that as the capital. Credit was obtained on the strength of such representations, and losses were sustained by such creditors when From Broadway, Inc., was unable to meet its obligations. A petition for its reorganization under Sec. 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, was filed on June 5, 1936.

This case was submitted to the jury, after defendant's motion for a directed verdict had been overruled, upon the theory that if the two amounts which the defendant caused to be put into the capital of From Broadway, Inc., from loans "made by Baker to the defendant Gordon, to the Gordon Shoe Company," no fraud had been proved, but if they came from advances made by Baker for shoes ordered and to be shipped to Baker the amounts did not become capital though set up as such on the books of that corporation.

■ This submission failed to give due legal effect to the undisputed evidence that whatever funds were sent to the appellant

by Baker, to whomever the checks were nominally payable, were either loans or advances to him personally against shoes to be shipped to Baker in accordance with purchases to be made by appellant. If they were loans, of course appellant was free to use any part of them to provide From Broadway, Inc., with capital. But advances for shoes may also have been free funds in his hands for like use. And so far as this record shows they were just that. He merely was bound to ship Baker shoes obtained where he decided to get them and to the amount of the advances. Baker put no restrictions upon the appellant and retained no legal or equitable interest in the particular funds supplied. If appellant failed to ship shoes as ordered he was no doubt liable for breach of contract but none of the advances became trust funds in his hands when received. Addington v. Forsyth Co., 234 N.Y. 93, 136 N.E. 305; Saraga v. Strauss, 208 App.Div. 66, 203 N.Y. S. 27. The government now recognizes that this is so and concedes in its brief that "the legal relationship between Leo Gordon, appellant, and C. H. Baker was that of debtor-creditor" but insists that is of no consequence on this appeal.

It now has another theory which seems to be that, although the appellant could lawfully contribute the named amounts to the capital of From Broadway, Inc., out of advances made to him by Baker and they were duly set up on its books as such, the representations mailed to that effect were but part of a fraudulent scheme to deplete the assets of From Broadway, Inc., by causing it to make shipments of shoes to Baker to the amount of such pretended capital contributions without paying From Broadway, Inc., for such shipments. Shipments of shoes were made to Baker by From Broadway, Inc., for which payment was made in part by an advance by Baker other than any already mentioned and in part by Rusch & Company to whom the invoices had been hypothecated. It is possible, of course, that appellant had concocted a scheme to defraud by depleting the assets of From Broadway, Inc., by making shipments of shoes to Baker which were in some way to be offset against the amounts the government charges were fraudulently set up in capital account and that the proved use of the mails was in furtherance of that scheme.

■ As the case was submitted, however, the jury was allowed to make the guilt

or innocence of the defendant depend upon whether or not the funds sent appellant by Baker and put into the capital account of From Broadway, Inc., were loans to Gordon or advances for shoes without instruction that as a matter of law he could have used them to provide capital for From Broadway, Inc., in either event. This error permitted the jury to find the appellant guilty even though the contested amounts had actually become capital to make the capital of From Broadway, Inc., as stated in the communications mailed and created a false issue. As it is impossible to say that the verdict was not based upon that, the error was obviously harmful and should be given due effect in accordance with our Rule 10, although no exception was taken to the charge.

Judgment reversed.